# William Simon *v.* Baltimore & Ohio Railroad Company, Appellant.

*Railroads—Obstruction of public crossings—Act of April* 12, 1851.

Under the act of April 12, 1851, sec. 2, P. L. 518, imposing a penalty of $30.00 for failure to remove an obstruction of a private crossing " after any agent or other person in the employment of the company shall have received at least fifteen minutes notice " of the desire of the parties interested to use the crossing, the notice must be given to an agent of the railroad company in the locality, or to some other person in the employment of the company who has some connection with the operation of the railroad. Notice to a mere track walker engaged at the time in cutting weeds and grass within the right of way is not sufficient.

The words of the act " after any agent or other person in the employment of the company shall have received at least fifteen minutes notice," do not mean that the railroad company under all circumstances is bound to remove the obstruction within fifteen minutes after notice, but they mean that the railroad company is entitled to " at least fifteen minutes' notice " and as much more as the circumstances of the particular case may require, with the exercise on its part of proper energy and the use of suitable means.

The statute was intended to quicken the diligence of the railroad company and protect the rights of landowners along its line by requiring prompt and energetic action on the part of the company to keep crossings free from obstruction. But it was not intended to require impossible or unreasonable things, nor to subject a company to a penalty because the removal of an obstruction within fifteen minutes after notice was physically impossible. Per WILLIAMS, J.

Argued Jan. 9, 1896. Appeal, No. 448, Jan. T., 1895, by defendant, from judgment of C. P. No. 3, Philadelphia Co., Sept. T., 1894, No. 703, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed. STERRETT, C. J., and DEAN, J., dissent.

'Appeal from judgment of magistrate to recover penalty for an obstruction of a farm crossing under act of April 12, 1851, P. L. 518. Before FINLETTER, P. J.

At the trial it appeared that on October 6, 1894, the plaintiff sought to cross the tracks of the appellant near or at Thirty-sixth and Mifflin streets in the city of Philadelphia, where said

tracks pass through the land occupied by the plaintiff, and find-
ing cars there, notified one Magee, a track walker of the defend-
ant, who was at the time engaged in mowing grass along the
tracks. Magee thereupon set about and with the aid of the
plaintiff removed the cars. The plaintiff's testimony was "that
the whole time of the delay after the notice was twenty-five to
fifty-five minutes." There was no dispute as to any fact except
the time; defendant called Magee who assisted in pushing the
cars from the crossing, and he testified he did not think the time
the cars were on the crossing after notice, was over five minutes.
He did not fix the time by a timepiece, while plaintiff's wit-
nesses did.

The court charged as follows:

[The only question in this case for your determination is how
long the obstruction of the passage by the cars existed. If it
was more than fifteen minutes, if notice had been given, then
your verdict must be for the plaintiff. If it was not, it must be
for the defendant.] [4]

Defendant's point was as follows:

1. Under all the evidence, the verdict must be for the defend-
ant. *Answer:* Refused. [3]

Verdict and judgment for plaintiff for $30.00. Defendant
appealed.

*Errors assigned,* among others, were (3, 4) above instructions,
quoting them.

*W. H. Addicks,* for appellant.—This statute being a penal
one, it must be strictly construed: Bucher v. Commonwealth,
103 Pa. 528; Commonwealth v. Shopp, 1 Woodward (Pa.), 129;
National Inspector of Flour, etc., v. Robert Elliott and Ellie
Williams, Addison, 238; Commonwealth v. Capp, 48 Pa. 53;
Gallagher v. Neal, 3 P. & W. 183; Cake v. Jacoby, 2 W. N. C.
391; Aechtemacht v. Watmough, 8 W. & S. 162; Overholtzer
v. McMichael, 10 Pa. 139.

The statute requires that notice shall be given to an agent
or other person before the defendant shall be liable for the
penalty, or the plaintiff entitled to recover. By a well con-
sidered line of cases it has been established beyond question
that where such expression as "other person" or "other party"

occurs in a statute, it must be understood to mean some "other person" or "other party" ejusdem generis : 17 Am. & Eng. Ency. of Law, 278 ; Sullivan's App., 77 Pa. 107 ; Allen's App., 81* Pa. 302 ; Ely v. Stanton, 120 Pa. 532 ; Renick v. Boyd, 99 Pa. 555 ; Com. v. Wickersham, 90 Pa. 311.

That the name agent is one given to a particular person or class of persons in employ of railroad corporations as contra-distinguished from those employed in other capacities, may be seen by reference to the 6th section of act of February 19, 1849.

It is nowhere shown by the plaintiff that the person whom the plaintiff notified had any connection whatever with the motive power or management of the defendant company, yet, as is well known, his duties were as distinct as if he had been employed by an individual disconnected with the defendant company.

*D. Webster Dougherty,* for appellee.—Such a construction of the act as is contended for by the learned counsel for appellant, would practically leave the plaintiff without the slightest possible redress in the future, except a tedious and expensive action at law for damages. Even in such a case the inability to prove the damage suffered with the certainty required by the law would result at the most in a verdict for nominal damages.

The plain meaning of the words in the act of assembly is that any person in the employment of the railroad company may be notified to remove the obstruction, and it is difficult to see why, if the legislature had any other intention, it did not modify the provision by enumerating the different classes of employees who might be notified.

OPINION BY MR. JUSTICE WILLIAMS, February 10, 1896.

The decision of this case depends on the proper construction of the second section of the act of April 12, 1851, providing for the punishment of railroad companies for obstructing the passage over any private road or crossing place by placing burden cars, engines or other obstructions on the track at the place of crossing. The act requires the company to remove any such obstruction promptly, and imposes a penalty of $30.00 for failure to do so, " after any agent or other person in the employment of the company shall have received at least fifteen

minutes notice" of the desire of the parties interested to use the crossing.

The plaintiff alleges that he is a farmer in possession, as tenant, of a farm crossed by the defendant's railroad; that the fields are reached by a private crossing over defendant's tracks, and that he was prevented from crossing on the 6th day of October, 1894, because the place of crossing was obstructed by defendant's cars, and the said cars were not removed within fifteen minutes after notice to one of the employees of the railroad company of his desire to use the crossing. Two questions naturally suggest themselves, First, on whom should the notice to remove the obstruction be served? Second, how soon after the notice is given must the obstruction be removed in order to escape the penalty imposed by the act? The words of the statute authorize a service upon " any agent or other person in the employment of the company." These words must receive a reasonable construction and be read in the light of the mischief aimed at, and the remedy provided. The object of the notice is to secure the removal of the obstruction complained of. It should be given therefore to an agent in the locality or to some other person in the employment of the company whose work has some connection with the operation of the railroad. A carpenter at work by the day upon a depot building or other structure, a stone mason at work upon a culvert, a plumber repairing the pipes about a water tank, or a bridge builder engaged in the construction of a bridge, might all be properly described as persons in the employment of the railroad company, but the nature of their employment shows that they have no connection with the movement of cars or with the condition of the track. The notice in this case was given to a person in the employment of the defendant company, engaged in cutting weeds and grass within the right of way as fenced. He made no objection to the service of the notice, but proposed that he and the plaintiff who gave it should set at work and move the cars, saying that they could do it sooner than he could go to the station and have an engine sent out for that purpose.

The plaintiff seems to have assented, and to have assisted in the removal of the cars from the crossing. What he now complains of is, not that the obstruction was not removed, nor that the work was not done as quickly as was practicable, but that

it was not done within fifteen minutes after the service of the notice. This brings us to our second question. The words of the statute are that the obstruction must be removed "After any agent or other person in the employment of the company shall have received at least fifteen minutes notice." This is the minimum of notice. The company is entitled in any case to "at least fifteen minutes" after notice in which to remove the obstruction. The maximum is not fixed. It is left, as it should be, to be determined by reference to the circumstances in each particular case. The obstruction might be due to the derailment of an engine, or of a train, and it might require several hours of vigorous effort with as large a force as could be used to advantage to replace the cars upon the track or to remove the wreckage so as to make the use of the crossing possible. The statute was intended to quicken the deligence of the railroad company and protect the rights of landowners along its line by requiring prompt and energetic action on the part of the company to keep crossings free from obstruction. But it was not intended to require impossible or unreasonable things, nor to subject a company to a penalty because the removal of an obstruction within fifteen minutes after notice was physically impossible. Liability to the penalty depends on the activity and good faith of the company and its employees after the fact of the obstruction comes to their notice. They are entitled to "at least fifteen minutes" and as much more as the circumstances of the particular case may require, with the exercise on their part of proper energy, and the use of suitable means. To inflict a fine for not doing within fifteen minutes what it was impossible to do in a much longer time would be unjust to the railroad company. To require less than prompt and diligent and continued effort on its part to remove the obstruction and open the crossing would be unjust to the landowner. It was an error therefore in the learned judge of the court below to instruct the jury as he did in this case, that "the only question in this case for your determination is how long the obstruction of the passage existed. If it was more than fifteen minutes, if notice had been given, then your verdict must be for the plaintiff." This is not a correct exposition of the statute. It makes the minimum of notice required by it do duty as the maximum. It leaves wholly out of view the nature and the

magnitude of the obstruction, the diligence of the company in the effort to remove it, the length of time necessarily occupied in that effort with all the force and all the skill that can be employed upon it, and fixes the attention of the jury solely on the position of the minute hand on the face of the clock. The fourth assignment of error is sustained and the judgment appealed from is reversed.

DISSENTING OPINION BY MR. JUSTICE DEAN:

The plaintiff, under his uncle Frederick Simon, the latter being a lessee for years, occupied a tract of sixty-five acres of land near Thirty-sixth and Mifflin streets in Philadelphia; the land is used principally as a truck farm, but part of it, some seasons, is sowed to grass and hay cut therefrom in the fall. The defendant's road cuts through the farm, leaving most of the arable ground on one side of the road, and the farmhouse and barn on the other. There are a private way and grade crossing with the usual plank between the rails for communication between the buildings and the cultivated part. On the 6th of October, 1894, plaintiff, with a two horse hay wagon, accompanied by three farm hands, on their way to haul hay from the further side to the barn, came to the crossing and found it obstructed by four standing freight cars. On one side of the crossing there was a vacant space of one thousand two hundred feet, any part of which the cars could have occupied without obstructing the crossing. Plaintiff testified that access to his fields had been frequently thus cut off; once he had been compelled to return with his team and mowing machine to his barn because he could not get over; at another time he had to cut a road through his standing grain to reach a crossing place at another point; he had complained to the assistant yard master at the time he wanted to cross with the mowing machine and the yard master had replied, " If they could get the crossing open, they would open it; if not, it would have to stay shut."

On the morning in question, when they came to the crossing and found it closed, he notified an employee of the railroad to remove the cars, but there was no engine in sight; assisted by this one railroad man, plaintiff and his three men, by the use of fence rails for levers managed to push the cars from the crossing far enough to permit the passage of his teams. The plain-

tiff's testimony is that the whole time of the delay after the notice was twenty-five to fifty-five minutes. There was no dispute as to any fact except the time; defendant called the one railroad employee who assisted in pushing the cars from the crossing, and he testified he did not think the time the cars were on the crossing after notice was over five minutes. He did not fix the time by a timepiece, while plaintiff's witnesses did.

The plaintiff brought suit to recover the penalty imposed for the obstruction of crossings by the 2d section of act of 1851. That reads thus :

" Any chartered railroad company in this commonwealth, obstructing or impeding the free use or passage of any private road or crossing place, by standing burden cars or engines or placing other obstructions on any railroad, whenever any private road or crossing may be necessary to enable the occupant or occupants of land or farms to pass over any railroad with horses, cows, hogs, sheep, carts, wagons and implements of husbandry, shall for every such offense, after any agent or other person in the employment of any railroad company shall have received at least fifteen minutes verbal notice to remove burden cars, engines or other obstructions from any private roads or crossing place that may pass over any railroad, be liable for a penalty of thirty dollars, which shall be for the use of the per son or persons aggrieved and which shall be recovered," etc.

The case was brought into the court below by appeal from the judgment of a magistrate. After hearing the evidence, the judge instructed the jury thus : " The only question in this case for your determination is, how long the obstruction of the passage by the cars existed. If it was more than fifteen minutes, if notice had been given, then your verdict must be for plaintiff. If it was not, then it must be for defendant." The verdict and judgment were for plaintiff.

As I have stated, the only conflict in the evidence was as to the time the cars were on the crossing after notice. This dispute was left to the jury, and was all that the court could leave to them. There was no averment by defendant of an exigency in moving trains, such as accident, blocking of tracks in front, or any other excuse which would have relieved it of the penalty. There was, from the undisputed evidence, a grossly negligent or a willful obstruction of plaintiff's crossing by four freight cars,

for which there was ample room on any part of the twelve hundred feet of empty rail alongside. Nor was there any provision for moving them, for there was no engine in sight ; in fact, so far as appears, they would have stood for hours, if plaintiff had waited for defendant to perform its plain duty under the law. He, with his three farm hands, assisted by one railroad hand, did the work of an engine and pushed the laden cars off the crossing.

Defendant's conduct was a flagrant violation of a plain law of the land, and it should without doubt pay the penalty.

The argument based on the importance to the public of the unimpeded management and control of their highways by large carrying corporations, as compared with the plaintiff's few loads of hay is wholly without weight. The very object of the act was the protection of individuals in the enjoyment of their rights against the unlawful encroachments of the railroad company. The defendant had but an easement, the right of passage for its cars at this crossing ; it was not a freight yard for standing cars ; plaintiff's right was subordinate to defendant's right ; he must wait until a moving train passed, but that was the extent of his subordination.

The effect of this judgment is to render to a great extent ineffective a wise and just law enacted for the protection of the weak against the strong. While I have the most profound respect for the opinion of the majority, I feel sure the judgment of the court in this case is a mistake, which in the not distant future it will correct. For that reason I do not concur.

STERRETT, C. J., concurs.